**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth R. COUCH,**
**Defendant–Appellant.**

No. 88–2803.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1990.

Kenneth R. Couch, Big Spring, Tex., pro se.

Ronald J. Sievert, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Tyler, Tex., for plaintiff-appellee.

Before GOLDBERG, POLITZ, and JONES, Circuit Judges.

POLITZ, Circuit Judge:

After conducting an evidentiary hearing on a motion filed under 28 U.S.C. § 2255 the district court sustained the conviction of Kenneth Couch but vacated his sentence and then resentenced him. Couch appeals. For the reasons assigned, we affirm.

*Background*

In September 1986 Couch was charged in a ten-count indictment with defrauding a bank insured by the Federal Deposit Insurance Corporation and related charges. 18 U.S.C. §§ 2, 371, 656, 1005, 1014. Judge Paul N. Brown of the Eastern District of Texas presided over his jury trial. The jury returned verdicts of guilty on all counts and Judge Brown imposed consecutive and concurrent sentences totaling 20 years imprisonment. Following unsuccessful post-trial motions Couch appealed to this court alleging, *inter alia*, prosecutorial interference with his right to counsel of his choice and trial court error in denying a continuance. We affirmed the conviction.

In September 1987 Couch invoked 28 U.S.C. § 2255 alleging, *inter alia*, that Judge Brown had invested approximately $19,000 in an unsuccessful oil drilling venture with him, that Judge Brown shared leasehold rights with Couch's children in an oil and gas lease,[1] that Judge Brown had not disclosed these contacts, and that in presiding over the trial under these circumstances Judge Brown had created an appearance of partiality in violation of 28 U.S.C. § 455 and the Due Process Clause.[2] Judge Brown subsequently recused himself, as did another judge to whom the case was reassigned by Chief Judge Justice of the Eastern District of Texas. Chief Judge

---

1. Judge Brown owned one of 33 leasehold interests, another of which was owned by the United States government.

2. Couch incorrectly invoked the Due Process Clause of the fourteenth amendment. This federal case implicates the fifth amendment. His section 2255 motion also alleged ineffective assistance of counsel, unlawful disclosure of grand jury transcripts, and errors in his presentence investigation report.

Charles Clark of the United States Fifth Circuit Court of Appeals then assigned Judge Donald E. Walter of the Western District of Louisiana to adjudicate Couch's complaint.

After conducting a hearing Judge Walter found no actual partiality on the part of Judge Brown and that Couch had, in fact, received a fair trial. Judge Walter determined that the issue was not one of nondisclosure, for Couch knew of the situation prior to trial, but only one of possible appearance of partiality. Giving the then-recent Supreme Court decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), an expansive reading Judge Walter concluded that in addition to actual partiality the goal of section 455(a) was to avoid the very appearance of partiality. Consistent therewith he decided to resentence Couch "to comply with the spirit and beyond of *Liljeberg*," and imposed three consecutive five-year terms of imprisonment and five years supervised probation.[3] Couch appeals, challenging both the approval of his conviction and his resentencing.

## Analysis

Despite his finding that there was no bias or prejudice on the part of Judge Brown, out of a heightened sensitivity for the possibility of an appearance of impropriety Judge Walter opted to vacate the sentence imposed by Judge Brown and resentence Couch. Couch does not challenge this finding of no actual bias, nor could he on the record before us. The sole issue raised is whether a possible appearance of impropriety poses a claim cognizable under 28 U.S.C. § 2255.

### 1. *Appearance of Impropriety*

■ Prisoners in federal custody may attack collaterally sentences and convictions "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Although the statute refers to the laws of the United States, the Supreme Court has held that "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). It follows that the scope of collateral review for other than constitutional claims is markedly narrow. *United States v. Capua*, 656 F.2d 1033 (5th Cir.1981).

Couch maintains that by presiding over his trial and sentencing him Judge Brown created an appearance of impropriety that violated both 28 U.S.C. § 455 and the Due Process Clause.[4] Section 455(a) contains the standard for determining whether disqualification is required under the statute: "Any ... judge ... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As the Supreme Court observed in *Liljeberg*, the apparent purpose of this statute is to "promote public confidence in the integrity of the judicial process,"[5] 486 U.S. at 860, 108 S.Ct. at 2202, 100 L.Ed.2d at 872, a concern which has "constitutional dimensions." At 865 n.

---

**3.** Immediately prior to resentencing Couch moved to disqualify Judge Walter on the grounds that his participation in the presidential campaigns of Richard Nixon and Ronald Reagan, and the fact that he, like Judge Brown, was a Republican and a Reagan appointee, might cause reasonable men to question his impartiality. This meritless motion was denied.

**4.** In addition to the general standard of section 455(a), Couch invoked section 455(b)(1), claiming that a reasonable person might question whether Judge Brown had knowledge of disputed evidentiary facts, and section 455(b)(4),

contending that the unsuccessful financial investment might lead a reasonable person to question Judge Brown's impartiality. We underscore that there is neither allegation nor suggestion of actual partiality, but only whether a reasonable person might perceive such.

**5.** This concern was first articulated in Canon 3(C)(1) of the Code of Judicial Conduct for United States Judges, which provides that "[a] judge shall disqualify himself in a proceeding in which his impartiality might reasonably be questioned...."

12, 108 S.Ct. at 2205 n. 12, 100 L.Ed.2d at 875 n. 12.

■ Despite this concern, it is apparent that section 455 and the Due Process Clause are not coterminous. Given the posture of the case before us, the issue is not whether Judge Brown breached section 455, but, rather, whether there was an appearance of impropriety which rose to the level of a "fundamental defect" resulting in "a complete miscarriage of justice." Absent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255.

■ As this and several other circuits have recognized, section 455 establishes a statutory disqualification standard more demanding than that required by the Due Process Clause. *See Bradshaw v. McCotter,* 796 F.2d 100 (5th Cir.1986); *United States v. Alabama,* 828 F.2d 1532 (11th Cir.1987), *cert. denied sub nom. Board of Trustees v. Auburn Univ.,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *Hardy v. United States,* 878 F.2d 94 (2d Cir.1989); *Aiken County v. BSP Div. of Envirotech Corp.,* 866 F.2d 661 (4th Cir. 1989); *Southern Pacific Communications Co. v. American Tel. & Tel. Co.,* 740 F.2d 980 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). Accordingly, conduct violative of section 455 may not constitute a due process deficiency. The conundrum is in blazing the parameters of each.

We find guidance in this quest from the Supreme Court's markings of the contours of due process as applied to judicial disqualification in *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).[6] The *Aetna* petitioners challenged on due process grounds a 5–4 decision of the Alabama Supreme Court which allowed certain first party tort actions against insurance companies making partial payment, and which sustained as not excessive a punitive damage award of $3.5 million. Petitioners claimed that the justice who drafted the majority opinion should have been disqualified because he had expressed hostility towards insurance companies that failed to pay claims and actually had pending in the Alabama state courts, at the time of the 5–4 decision, a class action posing virtually identical issues.

The Supreme Court began its analysis by noting that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Aetna,* 475 U.S. at 820, 106 S.Ct. at 1584 (quoting *F.T.C. v. Cement Institute,* 333 U.S. 683, 702, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948)), for "the Constitution does not reach every issue of judicial qualification." 475 U.S. at 821, 106 S.Ct. at 1585. Having noted this the Court recalled its holding in *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927), which announced that "it certainly violates the [Due Process Clause of the] Fourteenth Amendment ... to subject [a person's] liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." 475 U.S. at 821–22, 106 S.Ct. at 1585–86. The Court acknowledged, however, that "what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.' " 475 U.S. at 822, 106 S.Ct. at 1585 (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)).

To give substance to this imprecise inquiry the *Aetna* court adopted as a "reasonable formulation" the inquiry whether the "situation is one 'which would offer a possible temptation to the average ... judge to ... lead him not to hold the balance nice, clear and true.' " 475 U.S. at 822, 106 S.Ct. at 1585 (quoting *Ward v. Monroeville,* 409 U.S. 57, 60, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972)). Applying this due process standard to the case before it, the Court concluded that although general allegations of bias and hostility do not rise to a due process violation, the justice's financial stake in the outcome—regardless of whether he was in fact impartial—was "direct, personal, substantial [and] pecuni-

---

**6.** Section 455 was inapplicable in *Aetna* because it involved a state court judge. For purposes of the Due Process Clause analysis *this difference is irrelevant.*

ary" enough to constitute a violation of the Due Process Clause, 475 U.S. at 824–25, 106 S.Ct. at 1586–87.

■ *Aetna* thus instructs that the Due Process Clause "may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." 475 U.S. at 825, 106 S.Ct. at 1587. Sometimes, of course, but not always. The inquiry commanded by section 455 and that commanded by the Due Process Clause are not the same. The Due Process Clause requires a judge to step aside when a reasonable judge would find it necessary to do so. Section 455 requires disqualification when others would have reasonable cause to question the judge's impartiality. It is this additional, systemic concern for avoiding the appearance of impropriety that makes the section 455 standard for disqualification more demanding than that imposed by the Due Process Clause. At some point the two tests overlap. We conclude that it is this area of overlap that the *Liljeberg* court was referring to when it noted that the concern for public perceptions of judicial integrity has "constitutional dimensions." 486 U.S. at 865 n. 12, 108 S.Ct. at 2205 n. 12, 100 L.Ed.2d at 875 n. 12. *See Walberg v. Israel*, 766 F.2d 1071 (7th Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985).

■ Turning now to the case at bar, we must determine whether Couch's allegations fall within this protected constitutional dimension. We are persuaded beyond peradventure that his allegations do not. The alluded-to interests of Judge Brown do not compare even vaguely to those of the state jurist in *Aetna*. Judge Walter found as a fact that Judge Brown had no prejudice or bias and that Couch received a fair trial. That factual finding is not challenged nor could it successfully be challenged on the record before us. Nor does the systemic concern for the public perception rise to constitutional proportions.

Judge Walter vacated Couch's sentence and resentenced out of a superabundance of sensitivity to the possible public percep-

tion of impropriety. It was within his power to do so, and we applaud his action, although it was not constitutionally required. Judge Walter accorded Couch a measure of process well beyond that due on the facts of his case and placed a generous layer of balm on any systemic wound that might have been occasioned by Judge Brown's participation in the case. *Cf. Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) ("[J]ustice must satisfy the appearance of justice."); *United States v. Diaz*, 797 F.2d 99 (2d Cir.1986), *later app.*, 834 F.2d 287 (2d Cir. 1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988).

## 2. *Additional Claims*

Couch also raises claims of ineffective assistance of counsel, most of which were raised and rejected on the direct appeal of his conviction. The other grounds raised are without merit, particularly the suggestion that counsel had insufficient time to prepare for trial, considering the machinations reflected by this record.

Further, Couch raises several claims which were not presented to the trial court. Under this circuit's precedents they may not be considered on appeal. *Long v. McCotter*, 792 F.2d 1338 (5th Cir.1986); *Vardas v. Estelle*, 715 F.2d 206 (5th Cir. 1983), *cert. denied sub nom. Vardas v. McKaskle*, 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984).

■ Finally, Couch maintains that Judge Walter erred in resentencing because Counts One, Two, and Three were duplicative. This claim is baseless. Each count related to a violation of a separate statute and required proof of an element not necessary for the other two. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). Further, Couch insists that Judge Walter erred by relying upon contested information in the presentence investigation report in violation of Fed.R.Crim.P. 32(c)(3)(D). We agree with Judge Walter that the noted discrepancies were not fac-

tual but were, instead, conclusions based on undisputed facts as to which Couch had a hearing. Judge Walter did not err in rejecting Couch's personalized version of the presentence investigation.

We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.

The judgment of the district court is in all respects AFFIRMED.