**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ZANE BROWN HILL,
Petitioner-Appellant,

v.

JAMES B. FRENCH, Warden, Central
Prison, Raleigh, North Carolina;
STATE OF NORTH CAROLINA,
Respondents-Appellees.

No. 97-13

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-95-284-3-P)

Argued: October 28, 1997

Decided: December 24, 1997

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Harold Johnson Bender, LAW OFFICE OF HAROLD J.
BENDER, Charlotte, North Carolina; Zipporah Basile Edwards,
HORACK, TALLEY, PHARR & LOWNDES, Charlotte, North Car-
olina, for Appellant. Edwin William Welch, Associate Attorney Gen-
eral, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh,

North Carolina, for Appellees. **ON BRIEF:** Robert C. Stephens, HORACK, TALLEY, PHARR & LOWNDES, Charlotte, North Carolina, for Appellant. Michael F. Easley, Attorney General of North Carolina, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Zane Hill ("Hill") was convicted by a North Carolina jury of first degree murder and sentenced to death after he shot and killed his son, Randall Hill. Following direct appeal and state postconviction proceedings, Hill sought a writ of habeas corpus in federal district court. Three issues are presented in this appeal from the district court's denial of the writ: (1) whether the state judge's failure to recuse himself from state postconviction proceedings deprived Hill of a full and fair fact hearing; (2) whether the prosecution unlawfully suppressed material exculpatory evidence; and (3) whether trial counsel's performance was constitutionally ineffective. We affirm.

The facts relating to the murder are summarized in State v. Hill, 417 S.E.2d 765, 769-71 (N.C. 1992). We do not relate them here because they are not relevant to the issues presented.

I.

The first question presented for our decision is whether the state judge's failure to disqualify himself denied Hill a full and fair fact hearing on his postconviction claims in state court. We hold that it did not.

2

A.

Hill contends that two statements made by the state judge demonstrated partiality or bias requiring recusal. The judge made the first comment in the course of ruling on a defense request that different counsel be appointed to represent Hill on direct appeal. Hill's trial attorney argued that only independent counsel could adequately determine whether Hill was effectively represented at trial and sentencing and, therefore, whether to raise a claim of ineffective assistance on appeal. The judge denied the request, saying: "I saw no reason during the course of the trial, from a personal viewpoint, . . . how that could be raised."

The judge also made an extrajudicial statement to Delores Owen ("Owen"), a former employee of a dry cleaner patronized by the judge. According to Owen, the judge came into the cleaner's several days after the conclusion of Hill's trial. When Owen commented that she felt sorry for Hill, the judge responded: "[a]nybody that their family's happy to see them get the death penalty got what they deserved." After receiving Owen's testimony, the judge stated on the record: "I'm sure I may have made some comment to Ms. Owens when she asked me that question, or made that statement."

B.

In reviewing an application for a writ of habeas corpus by a person in state custody, a federal court must presume the correctness of facts found by a state court unless the applicant establishes the existence of a statutory defect in the state proceeding. 28 U.S.C.A. § 2254(d) (West 1994). One such defect is the failure of the state to afford the applicant a "full, fair and adequate hearing." Id. § 2254(d)(7). A federal court may grant an evidentiary hearing to an applicant who did not receive a full and fair fact hearing in state court. Townsend v. Sain, 372 U.S. 293, 313 (1963), overruled in part by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). Assuming that the improper denial of a recusal motion by a state court judge may render that proceeding unfair, we conclude that recusal was not required in the circumstances of the instant case.

3

In <u>Liteky v. United States</u>, 510 U.S. 540 (1994), the Supreme Court held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of . . . prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Id.</u> at 555. Applying that principle to the facts of the instant case, it is clear that disqualification was not required.*

The judge's comment on the perceived effectiveness of Hill's trial counsel merely evidenced an opinion based on information properly within his possession as the presiding judge at Hill's trial. The expression of a personal opinion in one context is not persuasive evidence that the judge was incapable of performing his function as a neutral arbiter in later proceedings. The judge's comment simply did not display the "deep-seated . . . antagonism" that mandates recusal.

Neither did the judge's comment to Owen display a"deep-seated antagonism that would make fair judgment impossible." Judges, as a matter of course, must form opinions and render judgments based on the evidence that is presented to them. The Supreme Court explained in <u>Liteky</u>:

> The judge who presides at trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . .

_____

*<u>Liteky</u> applied the federal recusal statute, 28 U.S.C. § 455. Thus, it is strictly inapplicable to the present case, in which the defendant must successfully assert the deprivation of a constitutional right to obtain relief. Because we find that Hill has failed to meet the more favorable standard supplied by section 455, however, we also conclude that he has failed to establish a due process claim. <u>See</u>, <u>e.g.</u> , <u>United States v. Couch</u>, 896 F.2d 78, 81 (5th Cir. 1990) (recognizing that the "statutory disqualification standard [is] more demanding than that required by the Due Process Clause.") (collecting cases).

4

Liteky, 510 U.S. at 550-51. While it may have been preferable for the judge to have refrained from sharing his opinion so freely, we do not believe that recusal was required under the standard set forth in Liteky.

II.

Hill next alleges that the prosecution failed to disclose material exculpatory evidence to Hill's trial counsel in violation of Brady v. Maryland, 373 U.S. 83 (1962). Hill's claim of suppression is without factual support. The documents allegedly suppressed were in the prosecutor's file. The prosecutor not only provided defense counsel with documents in her file and made the file available, but literally opened up the file on her desk and discussed its contents with defense counsel. On those facts, we hold that Hill's Brady claim must fail.

III.

We next consider Hill's claims that trial counsel was constitutionally ineffective. Hill challenges the effectiveness of trial counsel on three grounds. First, Hill has alleged that trial counsel failed to investigate and present evidence that would have supported a non-statutory mitigator of childhood abuse. Second, Hill has challenged the adequacy of counsel's preparation of an expert medical witness and decisions not to call other medical experts to testify. Finally, Hill has assailed the adequacy of counsel's investigation into the circumstances surrounding Randall Hill's death and evidence in mitigation. We address Hill's allegations in sequence.

A.

At the state postconviction hearing, witnesses testified that Hill was abused as a child by his father. In response to a question by trial counsel in their first interview, however, Hill stated that he had not been abused. Hill's trial counsel testified that he would have sought corroboration if Hill had disclosed abuse, but would not investigate further on a client's denial of abuse. The issue before us is whether counsel's decision not to pursue further investigation of possible childhood abuse constituted constitutionally deficient representation. We hold that it did not.

5

Hill's claim is foreclosed by Strickland v. Washington, 466 U.S. 668 (1984), and our decision in Barnes v. Thompson, 58 F.3d 971 (4th Cir.), cert. denied sub nom. Barnes v. Netherland, 116 S. Ct. 435 (1995). Under Strickland, when assessing the constitutional adequacy of counsel's investigation, we must inquire whether counsel's decision was "reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. The defendant's own statements may be determinative of the reasonableness of counsel's decisions:

> Counsel's actions are usually based, quite properly, on . . . information supplied by the defendant. In particular, what investigative decisions are reasonable depends critically upon such information. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless . . . , counsel's failure to pursue those investigations may not later be challenged as unreasonable.

Id. at 691.

Trial counsel was entitled to assume the truth of Hill's specific denial of the occurrence of abuse. See Barnes , 58 F.3d at 979-80 (holding that trial counsel "may rely on the truthfulness of his client . . . in deciding how to pursue his investigation."). Having induced inaction by his express disavowal of abuse, Hill cannot now challenge counsel's reliance on that denial in determining how best to allocate available investigatory resources. Therefore, we hold that counsel's decision not to seek evidence of childhood abuse did not amount to constitutionally deficient performance.

B.

Hill's second ineffective assistance claim concerns the adequacy of counsel's preparation of Dr. Felix, a psychiatrist who testified as an expert witness for Hill. Hill also challenges counsel's decision not to call as witnesses Hill's treating physicians and psychiatrist, Drs. Rardin, Elmore, and Gaworowski. We conclude that counsel's conduct did not fall outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

6

Dr. Felix first examined Hill in July 1990. At the time, Dr. Felix recommended that additional neuropsychological testing be arranged. The tests were never performed. When Hill's trial counsel spoke with Dr. Felix before trial, however, Dr. Felix said he felt prepared to testify. Counsel raised the issue of further testing, but Dr. Felix stated that it would not affect his opinion.

Counsel's actions were manifestly reasonable in light of Dr. Felix's equivocations regarding the additional testing and his assertion that he was prepared to testify. Hill's claim is without merit.

Next, Hill argues that the defense should have presented testimony from Dr. Gaworowski, a psychiatrist who treated Hill for alcohol abuse during three separate admissions and outpatient visits to Highland Hospital between 1982 and 1988. According to Hill, if called to testify, Dr. Gaworowski could have explained her diagnosis, admitted through the testimony of Dr. Felix, that Hill suffered from a "personality disorder with antisocial and passive aggressive features." She would have testified that "antisocial" meant behavior inappropriate to Hill's age, not "dangerous" or "criminal." Dr. Gaworowski also would have stated that Hill had "limited cognitive abilities that could affect his ability to adequately assess a situation where events happened quickly, particularly when drinking."

Dr. Gaworowski could also have testified, however, that Hill was "irresponsible and lacked good judgment" and discussed "behavior [that Hill's] wife described as cavorting with prostitutes and drag racing on the public highways." Dr. Gaworowski also would have observed that Hill competed with his children for the attention of Bonnie Hill, Hill's wife. Because Dr. Gaworowski's testimony on Hill's behalf would have opened the door to damaging testimony, we cannot say that counsel's decision not to call her as an expert witness was unreasonable.

Finally, Hill claims that counsel was ineffective for failing to contact either of Hill's treating physicians. According to Hill, Dr. Rardin would have testified that Hill was taking four narcotic drugs, explained their effect on Hill's mental state, confirmed that Hill was known to mix alcohol with his medication, and stated that, in combination, the drugs and alcohol would have clouded Hill's judgment and

7

depressed his mental ability. Dr. Elmore would have testified that the prescription medications taken by Hill can cause flawed judgment and impaired reflexes, and that consumption of alcohol would have increased these effects.

Trial counsel decided not to call Dr. Rardin or Dr. Elmore because counsel did not wish to dwell on Hill's physical disabilities in light of conflicting testimony about Hill's ability to perform hard physical labor. Furthermore, Hill's medical records were available to trial counsel and to Dr. Felix. Dr. Felix testified about the effects of the prescription drugs Hill was taking and the results of combining such drugs with alcohol consumption. The testimony of Drs. Rardin and Elmore would largely have been cumulative. Therefore, we conclude that trial counsel reasonably decided not to call Drs. Elmore and Rardin as witnesses.

Hill's remaining claims comprise an attack on the adequacy of counsel's investigation into the circumstances of the homicide and evidence in mitigation. After careful consideration of the record, we conclude that Hill's allegations of constitutional deficiencies are without merit.

In conclusion, we affirm the district court's denial of a writ of habeas corpus.

AFFIRMED