

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2004

# Johnson v. Carroll

Precedential or Non-Precedential: Precedential

Docket No. 03-2101

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Johnson v. Carroll" (2004). *2004 Decisions.* Paper 650.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/650

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2101

_____

RONALD N. JOHNSON

v.

THOMAS J. CARROLL, Warden;
ATTORNEY GENERAL OF
THE STATE OF DELAWARE

Thomas Carroll,
Appellant

_____

Appeal from the United States District
Court
For the District of Delaware
D.C. No.: 02-cv-00562
District Judge: Honorable Joseph J.
Farnan, Jr., Chief Judge

_____

(Argued: February 24, 2004)

Before: RENDELL, BARRY and
ROSENN, Circuit Judges

(Filed May 24, 2004)

Thomas E. Brown (Argued)
Office of Attorney General of Delaware
Department of Justice
820 North French Street
Wilmington, DE   19801

*Counsel for Appellant*

Joseph M. Bernstein (Argued)
800 North King Street, Suite 302
Wilmington, DE   19801

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

This appeal raises an interesting question under the recent enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) pertaining to the failure of a state judge to recuse himself because his impartiality might reasonably be questioned. A grand jury in Delaware indicted Thomas Carroll for the theft of property valued in excess of $1000, possession of a deadly weapon by a person prohibited, and several other related crimes. After a trial to a jury, he was convicted of the weapon charge and the lesser included charge of aggravated menacing. He was acquitted of all other charges. He was sentenced to eighteen years imprisonment as a habitual offender. The State Supreme Court affirmed his conviction and sentence. Johnson v. State, 797 A.2d 1206 (table), 2002 WL 714520 (Del. April 22, 2002).

Without filing any post-conviction motion in the state court, Johnson filed a petition for a writ of habeas corpus in the United States District Court for the District

of Delaware under 28 U.S.C. § 2254(d).[1] The District Court conditionally granted Carroll's petition for habeas relief as to his sentence, concluding that there existed an appearance of bias on the part of the sentencing judge. Johnson v. Carroll, 250 F. Supp.2d 395 (D. Del. 2003). The District Court ordered the State to grant Johnson a new sentencing hearing. The State timely appealed. In light of the stringent provisions of AEDPA, we reverse and direct the District Court to dismiss Johnson's habeas petition.

I.

A.

The relevant facts regarding Johnson's conviction and sentence are undisputed. The charges set forth in the indictment stemmed from the alleged kidnaping of his estranged sixteen-year-old daughter, Karen Vincent, on October 6, 1997.

Immediately before sentencing Johnson following his conviction, the state court trial judge held a conference with both the prosecutor and defense counsel in his chambers. The judge voluntarily disclosed that he "had an out-of-court conversation" with James Liguori, a Delaware attorney and former state prosecutor, at a social function at Liguori's home. "As you both know Jim Liguori, if you see him, he talks about cases all the time." The judge informed counsel that Liguori made a comment about Johnson during their conversation. As related by the judge, Liguori commented that Johnson was a "bad guy," that he had "threatened" Liguori and his family, and that Liguori "wanted to see that justice was done." The judge assured counsel that he believed that Liguori's comment would not have any impact on his view of the case or his pending sentencing decision.

Defense counsel at the time, Sandra Dean, a public defender, who had become Johnson's trial counsel mid-way through trial, voluntarily informed the judge of the background information regarding Johnson's alleged threat to Liguori eighteen years before, in 1981. Liguori, then a state prosecutor, prosecuted Johnson in an unrelated matter. Johnson, having been convicted and imprisoned, sent a Christmas card to Liguori in 1981. The Christmas card read: "You had fun in '81 and will be free in '83." Johnson escaped from prison, and it was debated then whether he posed a threat, presumably to Liguori and his family. The judge told Dean that he had no knowledge of the background information that she had just related and commented that it perhaps explained why Liguori made the comments about Johnson.

Dean then informed the judge that the local newspapers had reported the purported threat at that time and that the

---

[1] The respondent-appellants are Thomas Carroll, warden of the state prison where Johnson is jailed, and the Attorney General of the State of Delaware. To simplify reference, we refer to them as the State of Delaware.

2

Public Defender's Office had included the newspaper clippings among the documents submitted to the court in relation to Johnson's present trial. Dean assured the judge that Johnson's 1981 Christmas card was part of "public record." The judge and Dean both agreed that the purported threat was well documented and that the documents were all in the "whole file" earlier submitted to the court.

The state prosecutor, Robert O'Neill, in turn mentioned his own "recollection" of Johnson's purported threat to Liguori and his family. He then told the judge that Liguori's comment about Johnson's character was relevant to the court in meting out the sentence to him because he was charged as a "habitual offender" under state law. He informed the judge further that the court should consider Johnson's propensity for violence and his entire criminal history in determining the term of sentence. He also told the judge that Liguori arguably could be presented as a witness at Johnson's sentencing hearing.

Finally, in response to O'Neill's question as to whether she intended to file any motion regarding the ex parte communication disclosed by the judge, Dean told the judge she had no such intention because the alleged incident was "nothing new," "a matter of record," "happened a long time ago," and the judge had indicated that he would not give it "any undue weight." Dean told the judge also that she would discuss the matter with Johnson and expressed doubt that he would request a different judge for the pending sentencing. The judge concluded the conference by stating that he would not allow Liguori to be a witness at Johnson's sentencing hearing.

B.

Johnson obtained new counsel and appealed his conviction and sentence. As to Johnson's sentence, the Delaware Supreme Court rejected his claim that the trial judge had erroneously failed to recuse himself sua sponte. The court analyzed the issue first under the Delaware Judges' Code of Judicial Conduct and found the situation was not one of those enumerated in the Code that would mandate recusal. Johnson v. State, 2002 WL 714520, at *3. The court analyzed the issue then under a two-prong test set forth under its prior decisions. Id. (citing Stevenson v. State, 782 A.2d 249, 255 (Del. 2001); Los v. Los, 595 A.2d 381, 384 (Del. 1991)). Under the subjective prong, the court noted the trial judge's statement that "I don't view [the contact] to have any impact on my view of the case or my decision with regard to sentencing," and found it sufficient. Under the objective prong, the court did not find any "appearance of bias sufficient to cause doubt as to the judge's impartiality." Specifically, the court observed that the "[trial] judge did not engage in any active conduct demonstrating the appearance of impropriety." Id. (emphasis added) (distinguishing this case from Stevenson, 782 A.2d at 251, 257 n.3 (finding appearance of impropriety when a judge

who had previous contact with a victim affirmatively requested that the case be assigned to him)). The court observed additionally that Johnson's previous counsel at trial admitted, and his new counsel on appeal did not deny, that the record in his case available to the trial court had already contained a more detailed account of his alleged threat to Liguori. Id.

The District Court issued an order and opinion ruling against Johnson as to his conviction but in favor of him as to his sentence. Johnson v. Carroll, 250 F. Supp.2d at 398. Specifically, the court agreed with Johnson that the trial court judge erroneously failed to recuse himself sua sponte from sentencing Johnson following his voluntary disclosure that he had received an out-of-court ex parte communication from a former prosecutor regarding Johnson. The court agreed that the failure to do so created an appearance of bias on the part of the judge in violation of Johnson's due process rights under the United States Constitution.

II.

It is not disputed that Johnson had exhausted his state remedy prior to his initiation of the underlying federal habeas action. It is also not disputed that AEDPA governs a federal court's review of Johnson's habeas action. The District Court had subject matter jurisdiction under 28 U.S.C. § 2254. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253. The question of whether the District Court appropriately applied the AEDPA standard of review is a question of law subject to review by this Court de novo. Chadwick v. Janecka, 312 F.3d 597, 605 n.6 (3d Cir. 2002).

A.

AEDPA severely circumscribes a federal habeas court's review of a state court decision. AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). The determination of what constitutes "clearly established federal law" is a "threshold question in § 2254 cases." Lockyer v. Andrade, 538 U.S. 63, 71 (2003).

The statutory phrase "clearly established" is defined as follows:
Section 2254(d)(1)'s "clearly established" phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

4

decisions as of the time of the relevant state-court decision. . . . In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.

Id. at 71-72 (citations omitted) (emphasis added) (internal quotation marks omitted).

The statutory phrase "contrary to" is defined as follows:

[A] state court decision is contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent.

Id. at 73 (internal quotation marks omitted).

The statutory phrase "unreasonable application" is defined as follows:

[U]nder the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. The "unreasonable application"

clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable. . . . It is not enough that a federal habeas court, in its independent review of the legal question, is left with a "firm conviction" that the state court was "erroneous." [The Supreme Court has] held precisely the opposite: Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

Id. at 75-76 (citations omitted) (emphases added) (internal quotation marks omitted).

B.

The District Court acknowledged that it was bound by AEDPA's stringent standard in reviewing the merits of Johnson's habeas claims. The court agreed with Johnson that the Delaware Supreme Court's decision was "contrary to or an unreasonable application of federal law and an unreasonable application of the facts in light of the evidence." Johnson v. Carroll, 250 F. Supp. 2d at 403.

The District Court and Johnson

5

relied on three United States Supreme Court decisions, In re Murchison, 349 U.S. 133 (1955), Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), and Liteky v. United States, 510 U.S. 540 (1994).[2]  The Court agreed with Johnson that the trial judge's failure to recuse himself sua sponte gave rise to an appearance of bias and that the appearance of bias violated his due process rights. The Court wrote:

> In this case, it appears to the Court that the Delaware Supreme Court limited its analysis to the active conduct of the trial judge, an analysis which is inconsistent with the concept of an appearance of bias.  In addition, the Court did not consider the impact of Liguori's comments that "he wanted to see that justice was done."  In these circumstances, Liguori's ex parte "sentencing recommendation" could well create a situation in which a reasonable observer would question the trial judge's impartiality.  Because the Delaware Supreme Court limited its analysis to the active conduct of
>
> the judge, it did not consider the reaction of the reasonable observer and the related risks of injustice to the parties and undermining the public's confidence in the judicial process that result from the continued participation of a judge in a proceeding despite the judge's appearance of bias.  See Stevenson [v. State], 782 A.2d [249, 258 (Del. 2001) (en banc)].  Thus, the Court concludes that the Delaware Supreme Court decision was not entirely consistent with federal law and was not a reasonable application of the facts in light of the evidence.

Johnson v. Carroll, 250 F. Supp. 2d at 404 (emphases added).

### C.

Johnson has not asserted, and there is no evidence, that the trial judge harbored any actual bias toward him.  He argued, and the District Court agreed, that the ex parte communication created an appearance of bias and that the appearance of bias violated his due process rights under the United States Constitution.

Under the plain language of § 2254(d), as well as the United States Supreme Court's case law, we are presented only with one narrow issue: whether the Supreme Court has ever held in any of its decisions existing at the time of the District Court's judgment, including the three cases relied on by Johnson and the District Court, that an appearance of

---

[2] The District Court also relied on Stevenson v. State, 782 A.2d 249 (Del. 2001), to support its conclusion.  Because § 2254(d)(1) expressly limits federal law jurisprudence to decisions by the United States Supreme Court, the state court case will be disregarded in our review.

6

bias on the part of a state court judge, without more, violates the Due Process Clause of the United States Constitution. We are not, and cannot be, concerned with the issues of whether the trial judge should have recused himself sua sponte or whether the ex parte communication at issue was sufficient to constitute an appearance of bias. We assume that there was an appearance of bias.

We note first that the District Court has significantly changed the statutory language of § 2254(d) in its presentation of the issue before it. The phrase "clearly established" was noticeably absent in the court's presentation of the § 2254(d)(1) prong, and the court substituted the statutory phrase "unreasonable determination of the facts in light of the evidence" with the phrase "unreasonable application of the facts in light of the evidence" in its presentation of the § 2254(d)(2) prong. See Johnson v. Carroll, 250 F. Supp. 2d at 404. Because the AEDPA standard is strict, the Court's omission and deviation were erroneous and distorted its analysis.

We note also that despite its presentation of the § 2254(d)(2) prong, the District Court did not analyze the Delaware Supreme Court's decision under that prong. The reason is obvious: the decision of the state appellate court did not, and could not, involve any "determination of facts" regarding the undisputed ex parte communication at issue. Nor did the state court's decision involve any "unreasonable application of the facts," as expressed by the District Court. The state court adjudicated Johnson's appeal of his sentence under the Delaware Judges' Code of Judicial Conduct and its own case law regarding the recusal standard for Delaware judges.

As conceded by the District Court in its later decision to grant the state's motion for an enlargement of the stay of its judgment pending the resolution of this appeal, its earlier decision granting habeas relief "was based on an analogy to Supreme Court cases related to the issue of recusal under 28 U.S.C. § 455 [for federal judges] and not on direct precedent related to the trial judge's appearance of bias under the Due Process Clause." Johnson v. Carroll, No. 02-562 - JJF, 2003 WL 22136302 at *1 (D.Del. Sept. 10, 2003). (emphases added.) This belated realization was tantamount to an admission that none of the Supreme Court decisions relied on by the District Court in its earlier decision "clearly established" that mere appearance of bias, without more, violates the Due Process Clause. Our own reading of the cases shows that they do not stand for any such holding, and we are not aware of any other Supreme Court decision that has so held.

The Supreme Court held in In re Murchison, 349 U.S. 133 (1955), that it was unconstitutional for the same state judge, after a full hearing in open court, to punish contempt, previously committed before him while acting as a one-man "judge-grand jury" permitted under then Michigan laws. "It would be very strange

7

if our system of law permitted a judge to act as grand jury and then try the very persons accused as a result of his investigations." 349 U.S. at 137. The Court concluded that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." Id. at 136. That conclusion was based on "the basic requirement of due process" that the defendant receive "[a] fair trial in a fair tribunal." Id. The Court commented that although fairness certainly required "an absence of actual bias," "our system of law has always endeavored to prevent even the probability of unfairness." Id. The Court acknowledged that its "stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." Id. However, "to perform its high function in the best way justice must satisfy the appearance of justice." Id. (internal quotation marks omitted).

The District Court and Johnson relied on the above language to support their conclusion that an appearance of bias violated the Due Process Clause. In re Murchison does not stand for that broad conclusion. Instead, its holding, as opposed to dicta, is confined to the basic constitutional principle of prohibiting a judge from adjudicating a case where he was also an investigator for the government. The rest of the language quoted in the preceding paragraph merely explains the holding. Even a generalized reading of the holding, that a judge cannot

adjudicate a case where he has an interest in the outcome, does not stand for the conclusion, drawn by the District Court and Johnson, that a judge with an appearance of bias, without more, is required to recuse himself sua sponte under the Due Process Clause. Johnson has not alleged, and there is no evidence, that the trial judge here had a personal interest in the outcome of the sentence.

The Supreme Court held in Liteky v. United States, 510 U.S. 540 (1994), that recusal under 28 U.S.C. § 455(a) was subject to the limitation known as the "extrajudicial source" doctrine or factor. That statute requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Specifically, the Court concluded that apart from surrounding comments or accompanying opinion, evidencing such "deep-seated favoritism or antagonism" as would make fair judgment impossible, judicial rulings alone "cannot possibly show reliance upon an extrajudicial source." Id. at 555. In addition, opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings are not grounds for a recusal motion unless they display a similar degree of favoritism or antagonism. Id.

The Liteky holding is limited to the interpretation of the recusal standard under § 455(a) for federal judges. Facially, it does not stand for the conclusion, drawn by the District Court and Johnson, that appearance of bias alone on the part of a

8

state judge makes that judge's decision subject to federal habeas review under § 2254(d)(1). To the extent that the holding is relevant, it undercuts, rather than supports, Johnson's claim. Johnson has not alleged, and there is no evidence, that the trial judge harbored any deep-seated antagonism toward him. It is not disputed that Johnson's alleged threat to Liguori was documented in the records available to the trial judge prior to the sentencing. Under Liteky, an opinion formed by a federal judge, which the judge here was not, on the basis of facts introduced at trial, would not be grounds for a recusal motion, even had one been filed by Johnson.

Similarly, the Supreme Court's holding in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), is limited to an interpretation of the recusal standard for federal judges under § 455(a), as it related to the specific facts of the case. In that case, a federal judge conducted a bench trial involving a dispute over the ownership of a corporation formed by the defendant in that action for the purpose of constructing and operating a hospital. The judge issued a verdict in favor of the defendant. The judge had been a member of the board of a university and regularly attended its meetings. At the time of the trial involving the defendant, the judge knew that the defendant had negotiated extensively with the university regarding the purchase of a piece of real estate property owned by the university for the construction of the proposed hospital. The judge also knew at the time of the trial that the university had just approved reopening negotiations with the defendant.

Following two days of trial, the judge immediately announced his intention to rule for the defendant. After the trial, but before issuing the verdict, the judge did not attend a university board meeting, which discussed the terms of a sale agreement with the defendant. The proposed agreement provided that the agreement would be void if the defendant failed to retain the disputed ownership of the corporation. The judge did not read the minutes of that meeting until he had rendered judgment for the defendant.

Under the circumstances of that case, the Supreme Court concluded that the judge's participation in the case created a strong appearance of impropriety and plainly violated § 455(a), even if he lacked actual knowledge of the university's interest in the outcome of the dispute involving the defendant. Id. at 859. Specifically, the Court held that the purpose of the statute, to promote public confidence in the integrity of the judicial process, did not depend on whether the judge actually knew of the facts creating an appearance of impropriety, so long as the public might reasonably believe that he knew.[3]  Id. at 859-60. The Court

_____

[3]The Court pointed to four facts that might cause an objective observer to question the judge's impartiality and justify the Court's decision to affirm the vacating of the judgment in favor of the

defendant under Federal Rule of Civil Procedure 60(b)(6). First, in view of the financial importance of the defendant's project to the university, it was "remarkable" that the judge, who had regularly attended the meetings for the university board for a decade, "completely forgot" about the university's interest in having a hospital constructed on its property. Id. at 865. Second, it was an "unfortunate coincidence" that although the judge had regularly attended the university board's meetings, he did not attend that particular post-trial meeting that discussed and approved the terms of the sale agreement with the defendant. The minutes of that meeting were mailed to the judge four days before he issued judgment; if he had opened the envelope upon receipt, he would have been under a duty to recuse himself before he rendered judgment. Id. at 866. Third, it was "remarkable," and "quite inexcusable," that the judge failed to recuse himself after he had finally read the minutes. "A full disclosure at that time would have completely removed any basis for questioning the judge's impartiality and would have made it possible for a different judge to decide whether the interests—and appearance—of justice would have been served by a retrial." Id. By his silence, the judge deprived the plaintiff of a basis for making a timely motion for a new trial and also deprived it of an issue on direct appeal. Id. at 867. Finally, when the plaintiff's counsel filed its motion to

concluded that the facts of that case warranted the application of § 455(a) because the violation was "neither insubstantial nor excusable." Id. at 867. Although the judge did not know of his "fiduciary interest in the litigation, he certainly should have known." Id. at 867-68.

It is obvious that the Liljeberg Court's holding is limited to an interpretation of §455(a) governing recusal of federal judges and based on the specific facts of that case, where the judge's putative fiduciary interest in the outcome of the litigation, as being a member of the university board, conflicted with his judicial obligation to be free of actual and perceived impartiality. Even though the Court mentioned that the concern for the integrity of judges had "constitutional dimensions," id. at 865 n.12 (citing Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986) (citing Murchison, 349 U.S. at 136)), its holding was not based on the Due Process Clause. Liljeberg neither holds nor suggests that an appearance of bias on the part of a federal judge, without more, violates the Due Process Clause.

In contrast to the federal judge in

vacate, the judge still did not acknowledge that he had known about the university's interest both shortly before and shortly after the trial. Nor did he indicate an awareness of a duty to recuse himself after he had read the minutes. Id.

10

<u>Liljeberg</u>, the state trial judge here voluntarily disclosed the <u>ex parte</u> communication that he had received from a non-party prior to sentencing Johnson, providing him with a basis for making a timely motion for recusal. In contrast to <u>Liljeberg</u>, this case is devoid of any evidence showing a potential conflict of interest involving fiduciary or pecuniary interest.

In conclusion, none of the Supreme Court cases relied on by the District Court, and we are aware of none, has held or clearly established that an appearance of bias on the part of a judge, without more, violates the Due Process Clause. Because the position taken by the District Court is not supported by any United States Supreme Court case law to date, the District Court's grant of habeas relief is reversible error under AEDPA.

### D.

Our sister Courts of Appeals have rejected arguments similar to those made by Johnson. The Second Circuit concluded that § 455(a)'s "appearance of impropriety standard" is not "mandated by the Due Process Clause." <u>Hardy v. United States</u>, 878 F.2d 94, 97 (2d Cir. 1989). The Fifth Circuit observed that "section 455 and the Due Process Clause are not coterminous." <u>United States v. Couch</u>, 896 F.2d 78, 81 (5th Cir. 1990). "[C]onduct violative of section 455 may not [necessarily] constitute a due process deficiency." <u>Id.</u> (citations omitted). The <u>Couch</u> court held that a <u>federal</u> sentence was not open to collateral review on constitutional grounds under 28 U.S.C. § 2255 (regarding collateral review of a <u>federal</u> sentence) unless "an appearance of impropriety . . . rose to the level of fundamental defect resulting in a complete miscarriage of justice." <u>Id.</u> (internal quotation marks omitted).

The Seventh Circuit in <u>Del Vecchio v. Illinois Dept. of Corrections</u>, 31 F.3d 1363 (7th Cir. 1994) (en banc), expressly rejected the view that an appearance of bias amounted to a due process violation. The court acknowledged that "the due process clause sometimes requires a judge to recuse himself without a showing of actual bias, where a sufficient motive to be biased exists." <u>Id.</u> at 1371 (citing <u>Tumey v. Ohio</u>, 273 U.S. 510, 532 (1927); <u>In re Murchison</u>, 349 U.S. 133, 136 (1955); <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 825 (1986)). "Despite the Supreme Court's broad pronouncements about 'the appearance of justice,'" the <u>Del Vecchio</u> court concluded that it "cannot answer the due process question simply by concluding that it may have looked bad for [a state trial judge] to preside at trial." <u>Del Vecchio</u>, 31 F.3d at 1371.

The court specifically rejected the view that "the Supreme Court's 'appearance of justice' language from <u>Murchison</u> and <u>Aetna</u> as holding that the due process clause requires judges to recuse themselves based solely on appearances." <u>Id.</u> The court concluded, as do we, that those Supreme Court decisions "present no such holding. . . ." <u>Id.</u> The court observed further:

11

The Supreme Court has never rested the vaunted principle of due process on something as subjective and transitory as appearance. Instead, the Supreme Court simply uses the "appearance of justice" language to make the point that judges sometimes must recuse themselves when they face possible temptations to be biased, even when they exhibit no actual bias against a party or a cause.

In short, bad appearances alone do not require disqualification. . . . When the Supreme Court talks about the "appearance of justice," it is not saying that bad appearances alone require disqualification; rather, it is saying that when a judge is faced with circumstances that present "some [actual] incentive to find one way or the other" or "a real possibility of bias," a court need not examine whether the judge actually was biased. . . . Absent the incentive for bias, however, disqualification is not required despite bad appearance.

Id. at 1371-72 (citations omitted).[4] We

agree with the conclusions of our sister Courts of Appeals.

### III.

Because the Supreme Court's case law has not held, not even in dicta, let alone "clearly established," that the mere appearance of bias on the part of a state trial judge, without more, violates the Due Process Clause, the District Court's judgment based on that erroneous view must be reversed under AEDPA. The case will be remanded to the District Court with directions to dismiss Johnson's petition for a writ of habeas corpus.

---

[4]After an extensive survey of the Supreme Court decisions involving disqualifications of judges, the Del Vecchio court summarized the standard for disqualifications as follows:

The question is not whether some possible temptation to be biased exists; instead, the question is, when does a biasing influence require disqualification? Consistent with the common law, we begin in answering this question by presuming the honesty and integrity of those serving as adjudicators. Disqualification is required only when the biasing influence is strong enough to overcome that presumption, that is, when the influence is so strong that we may presume actual bias. This occurs in situations . . . in which experience teaches that the possibility of actual bias is too high to be constitutionally tolerable. A court must be convinced that a particular influence, under a realistic appraisal of psychological tendencies and human weakness, poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

DelVecchio, 31 F.3d at 1375 (citations omitted) (internal quotation marks omitted).

12