[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 8, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15530

_____

D. C. Docket No. 99-00416-CV-ID-DRB

TIMOTHY DAVIS,

Petitioner-Appellant,

versus

CHARLIE E. JONES, Warden
TROY KING, Attorney General of
the State of Alabama,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(November 8, 2007)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

HULL, Circuit Judge:

Timothy Charles Davis, an Alabama state prisoner appearing with counsel, appeals the district court's denial of his habeas corpus petition brought under 28 U.S.C. § 2254. After review and oral argument, we affirm.

## I. BACKGROUND

In his § 2254 petition, Davis challenges his 1980 murder conviction in Alabama state court. Davis, who was seventeen years old at the time, first appeared in juvenile court before Judge Robert Teel, Jr. for two detention hearings and one transfer hearing as to the murder charge. Davis was then tried as an adult in Alabama Circuit Court before Judge Kenneth Ingram.

In the juvenile court proceedings, the State of Alabama was represented by three or four attorneys at each hearing. One of the State's lawyers was Frank Teel, the brother of Judge Teel. Davis does not challenge the Alabama state court's findings that there was no actual bias on the part of Judge Teel, as the juvenile court judge. Rather, Davis contends that the relationship between Judge Teel and Frank Teel created an appearance of partiality and violated his federal constitutional due process rights, requiring reversal of his murder conviction. We begin by reviewing the Alabama juvenile and state court proceedings.

**A.     Juvenile Court Proceedings**

2

On July 25, 1978, Davis, who was seventeen years old at the time,[1] appeared before Judge Teel in Alabama juvenile court for a detention hearing in connection with the murder of sixty-eight-year-old Mrs. Avis Alford at Alford's Grocery on July 20, 1978. Special Prosecutors Mitchell Gavin and Tom Radney and Assistant District Attorney Frank Teel, who was the brother of Judge Teel, appeared as counsel for the State of Alabama. Defense attorneys Allen Edwards, Jr. and Lee Sims represented Davis.

Prosecutors Frank Teel and Gavin each questioned three of the State's six total witnesses. The State presented testimony that Davis's motorcycle was seen at Alford's Grocery near the time of the murder, that Davis was seen on his motorcycle shortly after the murder with blood on his hands and clothing, and that Davis told the police at the crime scene that he had found Alford's body in the store. Frank Teel made the closing argument for the State. Davis's counsel responded that the State had failed to establish probable cause for detaining Davis. Judge Teel rejected the State's request for detention and ordered that Davis be released.

On September 26, 1978, Davis appeared before Judge Teel for a second detention hearing regarding the Alford murder. Gavin, Radney and Frank Teel,

---

[1]Davis's birthday was March 18, 1961.

along with District Attorney Bob Williams, appeared as counsel for the State.

District Attorney Williams read the petition charging Davis with killing Alford.

Williams and Radney presented testimony from the State's twelve witnesses,

which included much of the same testimony as at the first detention hearing, and

forensic evidence from the crime scene and Davis's clothing that connected him to

the Alford murder. Frank Teel did not present any witnesses or make the closing

argument.

Sims and Edwards again represented Davis. The defense called one witness

who testified that Davis's fingerprints were not found on either the knife believed

to be the murder weapon or Alford's wallet. Judge Teel ruled that the State

established probable cause to believe that the allegation of delinquency was true

and ordered that Davis be detained.

On November 17, 1978, Davis appeared before Judge Teel for a juvenile

court hearing on the State's motion to transfer him to Circuit Court to be tried as an

adult for the Alford murder. At the time of the murder, Davis's age was seventeen

years, four months. Gavin, Radney and Frank Teel again appeared as counsel for

the State. Sims and Edwards again represented Davis. The State presented

testimony from eleven witnesses, and Frank Teel questioned two of them.

The State first presented testimony from Michael Smith, the probation

4

officer whose report recommended that Davis be certified to be tried as an adult. Smith recommended that Davis be tried as an adult primarily because of the nature of the charges, the lack of State juvenile facilities that could provide him adequate confinement and treatment, and the fact that Davis had accepted the responsibility of being an adult by getting married and having full-time employment. The State then presented testimony similar to what was presented at the second detention hearing as to the eyewitnesses and forensic evidence connecting Davis to the murder.

At the conclusion of the hearing, defense counsel argued that Davis was still a young boy and that the juvenile system was best suited to treat him. In closing for the State, Gavin argued that Davis should be tried as an adult because he was a married, full-time employed adult and, further, the juvenile courts were not prepared to handle a criminal case of this magnitude. Judge Teel ruled that the State had met its burden and certified Davis to be tried as an adult.

Davis has never claimed (1) that there was any evidentiary or legal error in the juvenile court's certification or detention rulings, or (2) that the State used the transcripts or any part of the juvenile court proceedings in his murder trial in Circuit Court. Davis also never moved to recuse Judge Teel.[2]

---

[2]Davis never has argued that he was not aware at the time of the juvenile court proceedings that Judge Teel and Frank Teel were brothers.

**B.    State Trial and Direct Appeal**

After the murder charge was transferred in 1978 to Alabama Circuit Court,

Judge Kenneth Ingram presided over Davis's case.  Frank Teel continued as one of

the State's attorneys, along with District Attorney William Hill and Assistant

District Attorney Robert Williams, Jr.  However, Judge Teel no longer was

involved in the case.

Davis's jury trial before Judge Ingram began on April 14, 1980.  The jury

found Davis guilty of capital murder and fixed his punishment at death by

electrocution.

Davis then filed a motion for a new trial based on, inter alia, Judge Teel's

having presided in juvenile court when Judge Teel's brother was one of the State's

attorneys.  This was the first time Davis objected to Judge Teel's presiding.  The

state trial court denied Davis's motion for a new trial.  After holding a separate

sentencing hearing, the state trial court sentenced Davis to death by electrocution.

Davis appealed, and the Alabama Court of Criminal Appeals ultimately

affirmed Davis's conviction and sentence.[3]  See Davis v. State, 554 So. 2d 1094

---

[3]We say "ultimately" because the Alabama Court of Criminal Appeals, in a one-sentence
order, initially reversed Davis's murder conviction and remanded the case for a new trial
pursuant to Beck v. Alabama, 447 U.S. 625, 100 S. Ct. 2382 (1980), in which the Supreme Court
concluded that a death sentence violated due process where an Alabama statute prohibited the
trial judge from instructing the jury on lesser included noncapital offenses and evidence would
have supported such an instruction.  See Davis v. State, 408 So. 2d 532 (Ala. Crim. App. 1981).
    The United States Supreme Court, however, vacated that decision of the Alabama Court

6

(Ala. Crim. App. 1984). In that direct appeal, Davis argued, <u>inter alia</u>, that Judge

Teel's <u>sua sponte</u> failure to recuse himself from the juvenile court proceedings

when his brother Frank Teel appeared as one of the State's attorneys violated

Davis's constitutional rights to due process.[4] In denying this claim, the state

appellate court determined that Judge Teel was not required to disqualify himself

under Alabama Code § 12-1-12[5] because his brother was not a "party" in the

proceeding. <u>Id.</u> at 1098-99.

The state appellate court also examined Canon 3C(1)(d) of the Alabama

Canons of Judicial Ethics, which provides that a judge should disqualify himself in

a proceeding in which "his impartiality might reasonably be questioned,"

including, but not limited to, instances where:

---

of Criminal Appeals and remanded Davis's case for further consideration in light of <u>Hopper v. Evans</u>, 456 U.S. 605, 102 S. Ct. 2049 (1982), in which the Supreme Court concluded that the Alabama statute precluding jury instructions on lesser included offenses in capital cases did not prejudice the respondent because the evidence did not warrant an instruction on a lesser included offense. <u>See</u> <u>Alabama v. Davis</u>, 457 U.S. 1114, 102 S. Ct. 2921 (1982).

Upon remand, the Alabama Court of Criminal Appeals concluded that <u>Beck</u> was inapplicable because the evidence in Davis's case did not support a jury instruction on a lesser included offense. <u>See</u> <u>Davis v. State</u>, 554 So. 2d 1094 (Ala. Crim. App. 1984).

[4]In this appeal, the State makes no argument that Davis has failed to exhaust state remedies as to his federal constitutional due process claim. <u>See</u> <u>United States v. Curtis</u>, 380 F.3d 1308, 1310 (11th Cir. 2004) (discussing long-standing rule in this circuit that issues not raised in a party's initial brief on appeal are deemed waived).

[5]Section 12-1-12 provides that "[n]o judge of any court shall sit in any case or proceeding in which he is interested or related to any party within the fourth degree of consanguinity or affinity . . . without the consent of the parties entered of record or put in writing if the court is not of record." Ala. Code § 12-1-12.

7

(d) He or his spouse, or a person within the fourth degree of relationship to either of them, or the spouse of such a person:
(i) Is named a party to the proceeding, or an officer, director, or trustee of a party;
(ii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding . . . .

Ala. Canons Jud. Ethics 3C(1)(d)(i)-(ii). The state appellate court concluded under Canon 3C(1)(d)(ii) that Judge Teel was not required to recuse himself because his brother, acting in his official capacity as an Assistant District Attorney, did not have "an interest that could be substantially affected by the outcome of the proceeding[s]." Davis, 554 So. 2d at 1098-99 (alteration in original) (quotation marks omitted). The state appellate court reasoned that because Frank Teel's "fee or salary was not dependent upon the result of the litigation . . . he had no interest other than his pride in the successful outcome of the proceedings." Id. at 1099 (quotation marks omitted).

The state appellate court also found that Davis had presented no evidence of actual bias by Judge Teel to rebut the presumption in Alabama law that a judge is qualified and unbiased. Id. The state appellate court noted that Davis did not challenge Judge Teel's presiding over the juvenile court until Davis filed a motion for a new trial nearly two years after the juvenile court proceedings. Id. Furthermore, after independently reviewing the juvenile court proceedings before Judge Teel, the state appellate court found no evidence of bias against Davis and

8

noted that Judge Teel's ruling at the first detention hearing was favorable to Davis. Id. Finally, in evaluating Davis's "appearance" claim, the Alabama Court of Criminal Appeals determined that Judge Teel's decision to certify Davis to be tried as an adult was well reasoned and showed no signs of an abuse of discretion. Id.

The Supreme Court of Alabama summarily affirmed as to the judicial recusal issue. Ex parte Davis, 554 So. 2d 1111 (Ala. 1989). The Supreme Court of Alabama thereafter overruled Davis's application for rehearing. Davis v. State, 569 So. 2d 738 (Ala. 1990). The United States Supreme Court denied Davis's petition for a writ of certiorari. Davis v. Alabama, 498 U.S. 1127, 111 S. Ct. 1091 (1991).

## C.     Rule 32 Petition

In February 1992, Davis, through counsel, filed a petition for relief from his murder conviction and death sentence pursuant to Alabama Rule of Criminal Procedure 32. In his Rule 32 petition, which he amended several times, Davis argued, inter alia, that Judge Teel's presiding over the juvenile court proceedings created an appearance of partiality that violated Davis's rights to due process and a fair proceeding under both the federal and Alabama constitutions. The Rule 32 court denied relief. Davis v. State, No. CV-92-014 (Ala. Cir. Ct. Jan. 31, 1997). Specifically, the Rule 32 court denied Davis's judicial bias claim because it already

9

had been addressed on direct appeal. Id. at 3. The Alabama Court of Criminal Appeals affirmed the judgment of the Rule 32 court, concluding that Davis's judicial bias claim was procedurally barred under Alabama Rule of Criminal Procedure 32.2(a)(3) and (4).[6] Davis v. State, 720 So. 2d 1006, 1014 (Ala. Crim. App. 1998).

Both the Supreme Court of Alabama, Ex parte Davis, No. 96-1093 (Ala. Aug. 14, 1998), and the United States Supreme Court, Davis v. Alabama, 525 U.S. 1149, 119 S. Ct. 1049 (1999), summarily denied Davis's petitions for a writ of certiorari.

## D.    Section 2254 Petition

In April 1999, Davis filed his § 2254 habeas corpus petition in the district court. The district court dismissed several of Davis's claims as procedurally barred. Subsequently, the district court granted Davis's § 2254 petition as to his death sentence, vacating it under Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183

---

[6]In a related claim, the Alabama Court of Criminal Appeals also denied Davis's claim that his trial attorneys were ineffective for failing to file a motion to recuse Judge Teel given his brother was one of the State's attorneys. Davis v. State, 720 So. 2d 1006, 1014-15 (Ala. Crim. App. 1998). Relying on its reasons for denying Davis's judicial bias claim on direct appeal, the state appellate court noted that Davis still had not presented any evidence of actual bias on the part of Judge Teel and made only conclusory allegations of a conflict of interest. Id. at 1015. The state appellate court further noted that Davis had not shown that the result of the proceedings would have been different if trial counsel had moved to recuse Judge Teel. Id. We do not address this issue, however, because there is no ineffective-assistance-of-counsel claim in this appeal.

10

(2005),[7] but denied his claims challenging his murder conviction.  Davis v. Jones, 441 F. Supp. 2d 1138 (M.D. Ala. 2006).

Specifically, the district court denied Davis's claim that his federal constitutional due process rights were violated by Judge Teel's participation in Davis's juvenile court proceedings.  The district court found that Davis had not refuted the findings of the Alabama Court of Criminal Appeals that there was no evidence of actual bias on the part of Judge Teel.  Id. at 1156-57.

As to any presumption of bias, the district court rejected Davis's argument that Judge Teel's kinship to one of the prosecutors established a presumption of bias, noting that the United States Supreme Court had stated that most matters of judicial disqualification do not rise to the level of a constitutional violation.  Id. at 1158.  The district court also agreed with the Third and Seventh Circuits' decisions rejecting the argument that the Due Process Clause requires that a judge recuse himself whenever there is an appearance of bias.  Id. at 1154-56 (citing Johnson v. Carroll, 369 F.3d 253 (3rd Cir. 2004), and Del Vecchio v. Ill. Dep't of Corr., 31 F.3d 1363 (7th Cir. 1994)).  Finally, the district court concluded that the cases cited by Davis applying the federal recusal statute, 28 U.S.C. § 455(a), were inapplicable

[7]In Roper, the Supreme Court concluded that the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under age eighteen when their crimes were committed.  Roper, 543 U.S. at 578, 125 S. Ct. at 1200.

11

to an appearance-of-bias challenge under the Due Process Clause. Id. at 1158.

Thus, based on Davis's failure to establish either actual or presumed bias, the district court held that the Alabama Court of Criminal Appeals' decision denying Davis's due process claim was not contrary to, or an unreasonable application of, clearly established federal law. Id. at 1159.

The district court granted Davis a certificate of appealability ("COA") as to whether the district court erred in denying Davis's claim that he was denied due process where a judge presided over Davis's juvenile court pre-trial proceedings while the judge's brother appeared as counsel for the prosecution.[8]

## II. DISCUSSION

### A.    Standard of Review

Our review of the district court's denial of a § 2254 petition is de novo but is "highly deferential" to the state court's decision. Marquard v. Sec'y for Dep't of

---

[8]The district court also granted Davis a COA as to whether the district court erred in denying his claim that the state trial court erroneously admitted Davis's statements to the police in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). The district court properly determined that the Alabama Court of Criminal Appeals' conclusion that Davis was not in custody when questioned by police at the crime scene was not contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)(1). Furthermore, Davis has failed to develop, and thus abandoned, any argument that the state court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2) by not challenging any specific factual finding in his brief on appeal. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (finding that an issue listed in the statement of facts but not elaborated upon in the initial or reply briefs was abandoned). Thus, we affirm the district court's denial of Davis's Miranda claim.

12

Corr., 429 F.3d 1278, 1303 (11th Cir. 2005), cert. denied, __ U.S. __, 126 S. Ct. 2356 (2006); Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). Specifically, federal courts may not grant habeas corpus relief on claims that were previously adjudicated on the merits in state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," 28 U.S.C. § 2254(d)(2).[9]

A state court decision involves an "unreasonable application" of clearly established Supreme Court precedent under § 2254(d)(1) if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000). Even if the federal habeas court concludes that the state court applied federal law incorrectly, relief is appropriate only if the application is also objectively unreasonable. Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850 (2002).

In addition, a state court's factual findings are presumed true unless the

---

[9]Because Davis filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), this case is governed by 28 U.S.C. § 2254, as modified by AEDPA.

13

petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Marquard, 429 F.3d at 1303; Robinson v. Moore, 300 F.3d 1320, 1342 (11th Cir. 2002).

## B.    Appearance-of-Partiality Claim

In his § 2254 petition and on appeal, Davis has not alleged, and there is no evidence that Judge Teel had, any actual bias against Davis. There is also no allegation of any error in Judge Teel's detention or certification rulings. Rather, Davis's claim is (1) that Judge Teel's impartiality might reasonably have been questioned when he presided over hearings where his brother was a prosecutor, (2) that Judge Teel should have recused sua sponte due to the appearance of partiality, and (3) that the Supreme Court has clearly established that an appearance of partiality by a state judge violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and requires reversal of a state criminal conviction.

Before discussing the Due Process Clause, we stress that the need to foster an appearance of impartiality in the judiciary is not only important but also well enshrined in the statutes and ethical canons governing both state and federal judges. For example, the Alabama Canons of Judicial Ethics require that "[a] judge should disqualify himself in a proceeding in which . . . his impartiality might

14

reasonably be questioned," which includes cases where a person within the fourth degree of relationship to the judge is "a party to the proceeding or an officer, director, or trustee of a party" or has "an interest that could be substantially affected by the outcome of the proceeding." Ala. Canons Jud. Ethics 3C(1)(d)(i)-(ii).[10] Similarly, both the federal recusal statute and the Code of Conduct for United States Judges require recusal in any proceeding where a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a); Code of Conduct for United States Judges Canon 3C(1); see also Model Code of Jud. Conduct R. 2.11 (2007) (same). The judiciary's concern with maintaining appearances of impartiality "stems from the recognized need for an unimpeachable judicial system in which the public has unwavering confidence." Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1111 (5th Cir. 1980)[11] (discussing § 455, the

---

[10]See Ex parte Jackson, 508 So. 2d 235, 236 (Ala. 1987) (citing Canon 3C(1)(d)(i) and concluding that the judge should have recused where his brother served on the Board of Directors for the defendant corporation because the judge's impartiality might reasonably be questioned). But see Ex parte Clanahan, 72 So. 2d 833, 836, 840 (Ala. 1954) (concluding, in a case before adoption of the Alabama Canons of Judicial Ethics, that the judge was not required to disqualify himself from civil case in which his son-in-law was an attorney for a party because the son-in-law was not a "party" and had no interest in the litigation other than his "pride in the successful outcome" of the case).

[11]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

federal recusal statute).[12]

Furthermore, we have no doubt that a federal judge would have been required to recuse if faced with the same situation as Judge Teel where the judge's brother appeared as an attorney representing a party before Judge Teel. Both the federal recusal statute and Code of Judicial Conduct for Federal Judges, unlike the Alabama Canons, provide that a judge's "impartiality might reasonably be questioned" when someone "within the third degree of relationship [to the judge] . . . [i]s acting as a lawyer in the proceeding." 28 U.S.C. § 455(b)(5)(ii); Code of Conduct for United States Judges Canon 3C(1)(d)(ii).[13]

However, in the instant case, our habeas review under § 2254(d) does not concern application of the federal recusal statute or federal canons because they do not govern state judges. See 28 U.S.C. § 455(a); Introduction to the Code of Conduct for United States Judges. Furthermore, we need not decide whether the Alabama appellate court's determination that recusal was not required under the Alabama Canons of Judicial Ethics was correct under Alabama law. We will not

[12]The inquiry of whether a judge's "impartiality might reasonably be questioned" under § 455(a) is an objective standard "designed to promote the public's confidence in the impartiality and integrity of the judicial process." Potashnick, 609 F.2d at 1111.

[13]The federal recusal statute and the Code of Judicial Conduct do not allow the parties to remit this ground for disqualification. 28 U.S.C. § 455(e); Code of Conduct for United States Judges Canon 3(D). But see Model Code of Jud. Conduct R. 2.11(A)(2)(b), (C) (2007) (requiring recusal when a person within the third degree of relationship to the judge is a lawyer in the proceeding, but allowing waiver of this ground for disqualification by the parties).

16

question the Alabama appellate court's application of state law in federal habeas corpus review.  See Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.").

Instead, our habeas review here narrowly concerns only the Due Process Clause and whether the Alabama Court of Criminal Appeals' rejection of Davis's federal constitutional due process claim constituted an "unreasonable application" of clearly established federal law as determined by the Supreme Court's precedent in 1984.[14]  In ascertaining "clearly established Federal law" regarding the Due Process Clause for our § 2254(d)(1) analysis, we look to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[15]  Williams, 529 U.S. at 412, 120 S. Ct. 1495 at 1523.

We fully agree with Davis that "[a] fair trial in a fair tribunal is a basic requirement of due process."  Callahan v. Campbell, 427 F.3d 897, 928 (11th Cir.

---

[14]In this appeal, Davis has not argued that the Alabama Court of Criminal Appeals' decision was "contrary to" clearly established federal law, and, as will be shown in our discussion herein, there is no "materially indistinguishable" Supreme Court precedent applying the Due Process Clause that reached an opposite result than the Alabama Court of Criminal Appeals' decision.  See Williams, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.

[15]Thus, we do not look to the decisions of the lower federal courts in this analysis. Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1308 (11th Cir. 2005) (quoting Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001)), cert. denied, ___ U.S. ___, 127 S. Ct. 348 (2006).

2005) (quoting In re Murchison, 349 U.S. 133, 136-37, 75 S. Ct. 623, 625 (1955)). However, there is no claim, much less showing, of any error or actual bias by Judge Teel. Rather, Davis makes only an appearance claim, and, as outlined below, none of the Supreme Court cases relied upon by Davis establishes that an appearance problem violates the Due Process Clause.

In two of the cases cited by Davis, the judge in question had an actual pecuniary interest in the litigation. See Ward v. Village of Monroeville, 409 U.S. 57, 93 S. Ct. 80 (1972); Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437 (1927). For example, in Tumey, the mayor of a village who served as the judge in a defendant's criminal trial was paid a portion of the court fees and costs only if the defendant was convicted. Tumey, 273 U.S. at 520, 47 S. Ct. at 440. The Supreme Court concluded that a criminal defendant's due process rights are violated when the judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against" the defendant. Id. at 523, 47 S. Ct. at 441. Accordingly, the Tumey Court found a due process violation because the mayor-judge had "a direct, personal, substantial pecuniary interest" in convicting the defendant. Id.

However, in discussing due process, the Tumey Court cautioned that "[a]ll questions of judicial qualification may not involve constitutional validity" and "[t]hus matters of kinship, personal bias, state policy, remoteness of interest would

18

seem generally to be matters merely of legislative discretion." Id. at 523, 47 S. Ct. at 441; see also Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820, 106 S. Ct. 1580, 1584 (1986) (stating that "'[m]ost matters relating to judicial disqualification [do] not rise to a constitutional level'" (quoting FTC v. Cement Inst., 333 U.S. 683, 702, 68 S. Ct. 793, 804 (1948) (second alteration in original)); Del Vecchio, 31 F.3d at 1391 (Easterbrook, J., concurring) (concluding that "disqualification for 'appearance of impropriety' is a subject for statutes, codes of ethics, and common law, rather than a constitutional command" and that "[n]one of [the Supreme] Court's constitutional decisions . . . establishes that an 'appearance' problem . . . invalidates a judgment").[16]

Similarly, in Ward, the mayor-judge who presided over traffic court was responsible for the town's finances and, as a judge, imposed traffic court fines that were a major part of the town's income. Ward, 409 U.S. at 58, 93 S. Ct. at 82. The bias in Ward, like Tumey, derived from a pecuniary interest in the litigation, not an appearance situation. Thus, Tumey and Ward are not on point.

Davis additionally cites two Supreme Court cases involving contempt proceedings that also are totally different from his case. In Offutt v. United States,

_____

[16]The majority in Del Vecchio agreed with the historical analysis of Supreme Court precedent and the conclusion that "the Supreme Court has never rested due process on appearance" in Judge Easterbrook's concurring opinion. See Del Vecchio, 31 F.3d at 1372 n.2.

19

348 U.S. 11, 75 S. Ct. 11 (1954), the Supreme Court reversed a contempt sanction imposed on trial counsel for a criminal defendant immediately after the criminal trial. The Court of Appeals had reduced counsel's contempt sentence from 10 days to 48 hours based on the trial judge's "personal animosity" and "hostility" to trial counsel during the criminal trial. Id. at 12-13, 15-16, 75 S. Ct. at 12-14. The Supreme Court reversed the entire contempt sanction against trial counsel because the trial judge had "permitted himself to become personally embroiled" with counsel and "failed to represent the impersonal authority of law." Id. at 15-17, 75 S. Ct. at 14-15 (emphasis added). While the appearance created by the trial judge's interactions with trial counsel was part of the problem, it is clear that the trial judge's outbursts and personal animosity in Offutt demonstrated an actual bias against counsel in the contempt proceeding.

Davis also relies heavily on language from In re Murchison, 349 U.S. 133, 75 S. Ct. 623 (1955), which prohibited a judge from performing prosecutorial and judicial functions in the same case. The judge acted as a "one-man grand jury," and two witnesses appeared before him. Id. at 134, 75 S. Ct. at 624. The same judge in Murchison later charged the witnesses with contempt based on their grand jury testimony, then tried them and convicted them. Id. at 134-35, 75 S. Ct. at 624-25. In fact, the judge, during the contempt proceedings, had recalled his own

20

personal impressions from the grand jury proceedings, so there was explicit evidence present of the influence of the grand jury proceedings on the judge. Id. at 138, 75 S. Ct. at 626. The holding of Murchison is that a judge may not serve as both an investigator in a grand jury and as a judge in a contempt proceeding based on testimony before the grand jury.[17]

Furthermore, our circuit, as well as the Third and Seventh Circuits, already have rejected the claim that Murchison holds that an appearance of bias violates the Due Process Clause. Callahan, 427 F.3d at 928-29; Johnson, 369 F.3d at 260-63; Del Vecchio, 31 F.3d at 1371-74. In Callahan, this Court briefly discussed and agreed with the Third Circuit's decision in Johnson, noting that "the Third Circuit was asked to read Murchison as holding that the appearance of bias violated the Due Process Clause." Callahan, 427 F.3d at 928. This Court in Callahan then agreed with the Third Circuit that "'[Murchison's] holding, as opposed to dicta, is confined to the basic constitutional principle of prohibiting a judge from adjudicating a case where he was also an investigator for the government.'" Id.

_____

[17]We focus our analysis on Tumey, Ward, Offutt, and Murchison, where disqualification was required, because these are the Supreme Court cases cited by Davis. In several other bias cases, however, the Supreme Court held that the Due Process Clause did not require disqualification. See Withrow v. Larkin, 421 U.S. 35, 47-55, 95 S. Ct. 1456, 1464-68 (1975) (concluding that state medical board could both investigate charges of illegality against a doctor and determine whether to suspend the doctor's license); Ungar v. Sarafite, 376 U.S. 575, 585-88, 84 S. Ct. 841, 847-49 (1964) (concluding that state trial judge did not become "personally embroiled" with trial witness and thus could preside over contempt proceedings arising from the witness's "contemptuous remarks" toward the judge).

21

(quoting Johnson, 369 F.3d at 260) (alteration in original).[18]  In Callahan's case, however, the state trial judge "was not an investigator for the government," and thus this Court concluded that "Murchison is not on point" and that "[t]he state court's rejection of Callahan's claim based on [the state trial judge's] failure to recuse himself was not 'contrary to' or an 'unreasonable application of' clearly established Supreme Court precedent."[19]  Id. at 929.

The Seventh Circuit not only interpreted the Supreme Court's Murchison decision the same way but also considered all the relevant Supreme Court precedent over the past 100 years and concluded that "[t]he Supreme Court has never rested the vaunted principle of due process on something as subjective and transitory as appearance."  Del Vecchio, 31 F.3d at 1371-72.

---

[18]While not mentioned in Callahan, the Third Circuit also stated that:
Even a generalized reading of the [Murchison] holding, that a judge cannot adjudicate a case where he has an interest in the outcome, does not stand for the conclusion . . . that a judge with an appearance of bias, without more, is required to recuse himself sua sponte under the Due Process Clause.
Johnson, 369 F.3d at 260.

[19]While the police were interrogating Callahan at the Sheriff's office, Callahan's father asked attorney Fred Lybrand to speak with Callahan.  Callahan, 427 F.3d at 908.  The police refused because Callahan had not requested a lawyer and Lybrand had said he did not represent Callahan.  Id.  Lybrand and Judge Monk then went to the Sheriff's office.  Id.  Judge Monk entered the interrogation room, explained to Callahan his Miranda rights, and asked if he wanted to speak to Lybrand.  Id. at 908-09.  Callahan responded that he did, and the interrogation stopped.  Id. at 909.  Callahan later moved for Judge Monk to recuse himself from Callahan's trial because the defense intended to call Judge Monk as a witness if the State tried to admit Callahan's statements from the interrogation.  Id. at 911.  Judge Monk denied Callahan's motion to recuse and request to call him as a witness, and presided over Callahan's first and second jury trials.  See id. at 911-16.

22

In reviewing Supreme Court precedent, we note that the Supreme Court has used language, albeit in dicta, that endorses the importance of an appearance standard in the judicial process. See Murchison, 349 U.S. at 136, 75 S. Ct. at 625 ("[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'" (quoting Offutt, 348 U.S. at 14, 75 S. Ct. at 13)); Tumey, 273 U.S. at 532, 47 S. Ct. at 444 ("Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law.").[20] The Supreme Court also has observed, albeit in dicta too, that "[a]ll questions of judicial qualification may not involve constitutional validity" and, specifically, that "matters of kinship . . . would seem generally to be matters merely of legislative discretion." Tumey, 273 U.S. at 523, 47 S. Ct. at 441. In any event, the Supreme Court has told us that under § 2254(d)(1) we must look to Supreme Court holdings, not dicta. Williams, 529 U.S. at 412, 120 S. Ct. at 1523.

Apparently recognizing that the Supreme Court's holdings have not

---

[20]We read the Supreme Court's dicta in these cases as essentially indicating that the appearance of bias in certain circumstances can be so substantial and the motive or incentive for bias so strong as to create a presumption of actual bias that may be constitutionally intolerable under the Due Process Clause. See Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994). However, to date the Supreme Court has never set aside a judgment under the Due Process Clause based on an appearance-of-bias standard.

addressed the appearance of partiality, much less kinship issues in pre-trial juvenile court proceedings, Davis contends that our analysis of the contours of the Due Process Clause's requirement of a fair and impartial tribunal should be informed by the kinship disqualification standard in the federal recusal statute, 28 U.S.C. § 455, and our decision in Potashnick interpreting § 455. This Court concluded in Potashnick that the district court judge should have recused where his father was a senior partner in the law firm representing the plaintiff because, under § 455(b)(5)(iii), a partner in a law firm related within the third degree to a judge always will have an interest that could be substantially affected by the outcome of a proceeding involving the partner's law firm. Potashnick, 609 F.2d at 1113. Thus, in addition to the kinship relationship in Potashnick, the judge's father, as a law firm partner, had a pecuniary interest in the matter before the district court judge.[21]

More importantly, this Court and other circuits uniformly have concluded that the federal recusal statute establishes stricter grounds for disqualification than the Due Process Clause. See United States v. Alabama, 828 F.2d 1532, 1540 n.22 (11th Cir. 1987) (addressing a district court judge's failure to recuse under 28

_____

[21]Davis also cites the Seventh Circuit's similar decision in SCA Services v. Morgan, 557 F.2d 110 (7th Cir. 1977), which concluded that a district court judge should have recused where his brother was a partner at the law firm representing one of the parties. SCA Servs., 557 F.2d at 117.

24

U.S.C. §§ 144 and 455, rather than the Due Process Clause, "because the statutory grounds for disqualification are stricter than the requirements of due process"); see also United States v. Sypolt, 346 F.3d 838, 840 (8th Cir. 2003) (stating that the federal recusal statute "reaches farther than the due process clause"); United States v. Couch, 896 F.2d 78, 81 (5th Cir. 1990) (stating that "section 455 and the Due Process Clause are not coterminous"). To be sure, judges properly are held to stricter ethical codes of judicial conduct than simply the constitutional minimum standards. But a § 455 violation stemming from the appearance standard does not automatically mean the defendant was denied constitutional due process. And although there may certainly be areas where the requirements of § 455 and the Due Process Clause overlap in assuring a fair and impartial tribunal (such as actual bias, for example), nothing in Potashnick, a § 455 case, mentions, much less analyzes, the Due Process Clause.

In any event, our review under § 2254(d)(1) is confined to determining whether the state court decision was an unreasonable application of clearly established federal law as determined by the decisions from the Supreme Court in 1984. Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). There is simply no Supreme Court holding establishing that the type of appearance problem alleged here violates the Due Process Clause or that Davis lacked an impartial tribunal.

25

Indeed, the record here shows that: (1) Judge Teel presided over only the pre-trial juvenile court proceedings; (2) Judge Teel's brother was one of four attorneys representing the State and had no pecuniary interest in the outcome of the case; (3) Judge Teel ruled in favor of Davis at the first detention hearing; and (4) as Davis acknowledged at oral argument, nothing about the juvenile court proceedings was presented to the jury during Davis's criminal jury trial in the Alabama Circuit Court. There is no claim by Davis of any actual bias by Judge Teel or any legal or evidentiary error in any of Judge Teel's pre-trial rulings. Given the Supreme Court's precedent in 1984 and the facts of this case, we cannot say that the decision by the Alabama Court of Criminal Appeals was an unreasonable application of clearly established federal law to the facts of this case under § 2254(d)(1).

**AFFIRMED.**