[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15682
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 17, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-02034-CV-JFG-NW

COREY L. LEE,

Petitioner-Appellant,

versus

GRANT CULLIVER,
ATTORNEY GENERAL OF THE
STATE OF ALABAMA, THE,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 17, 2008)

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

Corey Lee, a state prisoner acting pro se, appeals the district court's denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a 2002 conviction and life sentence for burglary and attempted murder. We granted

a certificate of appealability on the issue of "[w]hether the district court properly concluded that Lee was not denied the right to testify on his own behalf at his criminal trial." After thorough review, we affirm.

We review the district court's denial of a § 2254 petition de novo but we are "highly deferential" to the state court's decision. Davis v. Jones, 506 F.3d 1325, 1331 (11th Cir. 2007). Pursuant to § 2254(d), federal courts may only grant habeas relief on claims previously adjudicated in state court, as in this case, if the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's summary rejection of a claim, without discussion, qualifies as an adjudication on the merits under § 2254(d) and, thus, warrants deference. Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002).

A criminal defendant has a fundamental constitutional right to testify on his own behalf at trial, and this right cannot be waived by defense counsel. Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). "A claim of ineffective assistance of counsel is the proper framework to analyze defendant's allegation

2

that his attorney has violated his right to testify." Id. To demonstrate ineffective assistance of counsel, a defendant must prove that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove the deficient performance prong of the Strickland test, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Id. Under the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. But "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

We need not address whether Lee's counsel was deficient for failing to call Lee to testify, because Lee cannot show that he was prejudiced under Strickland. See id.; see also Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, __ (11th Cir. 2008) (recognizing that we may affirm on any ground supported by the record). As the record shows, the evidence in support of Lee's attempted murder conviction

3

included testimony from the victim, Harvey Summerhill, who was the new boyfriend of Lee's ex-girlfriend, Felicia Moore, and who testified that Lee had approached him one morning on his way to work and shot him. Summerhill said that right before he was shot, he saw Lee in the light and knew "exactly" who he was. In addition, police officer Brad Regan, a former classmate of Summerhill's and Moore's, testified against Lee. Regan said that he had been on patrol near a party that Summerhill and Moore attended two days after the shooting, and was summoned into the party to listen in on a phone call that Moore had received. Regan heard Moore say, "so what are you saying?"; the voice on the other end say "you better step back"; Moore say "so what are you saying, if I don't you will kill me, too?"; and the voice say, "step back or I will take you, too." Having noted from the caller ID that the call had come from Eliza Coffee Memorial in Florence, Alabama, Regan then contacted the Florence police department, a Florence officer went to the coffee shop, found Lee there, and picked him up.

Moore also testified about the phone call, which she knew came from Lee because she recognized his voice, and gave a similar account of the statements made to her. Specifically, Moore testified that during the call, Lee repeatedly told her to stay away from Summerhill, she kept asking Lee why he was "doing this," and Lee told her to "get away" from Summerhill or Lee would "get [her], too."

4

In Lee's defense, his new girlfriend, Renae Hollingsworth, testified that he was with her at the time of the shooting; and Moore's mother testified that Summerhill had told her that he thought it was a drunk or drug user who had shot him, but that he was going to say it was Lee. Lee asserts on habeas that had he testified, he would have corroborated that he did not shoot Summerhill because he was at Hollingsworth's residence at the time of the shooting.

While this is a close case, we cannot say that it is as close as Nichols v. Butler, 953 F.2d 1550 (11th Cir. 1992) (en banc), where the Court held that a petitioner -- who had been coerced by trial counsel into remaining silent and not testifying at trial -- had been prejudiced under Strickland. There, the only evidence that the petitioner was the person involved in the crime for which he was convicted was eyewitness identification of him by one store employee who had glimpsed him only briefly. Id. at 1554. In the circumstances of that "very close case," where only the store employee's perception supported the petitioner's conviction, the Court thus concluded that the petitioner should have been allowed to testify to his version of events. Id.

Here, by contrast, there was unwavering eyewitness testimony from the victim, who knew and recognized Lee as the shooter. In addition, two different witnesses -- both Moore and a police officer -- testified that they independently

5

heard Lee threaten Moore that he would "get" her "too," plainly suggesting that Lee had admitted to Summerhill's shooting. On this record, we are compelled to conclude that there is no reasonable probability that the results of the trial would have been different had Lee testified in his own defense.[1] Since Lee's claim of prejudice is unsupported on the face of the record, we further conclude that no evidentiary hearing was required in the district court. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (no hearing is required if allegations fail to state a claim when viewed against the record). Thus, the state court's application of Strickland was not unreasonable, and we affirm the district court's denial of Lee's § 2254 petition.

**AFFIRMED.**

---

[1] The evidence supporting Lee's burglary conviction was similarly strong, and as a result, we cannot say that there is a reasonable probability that the results of the trial would have been different had Lee testified that he lived with Moore at the time of the burglary. While Moore's mother testified in Lee's defense that Lee had a key to the apartment and that she had witnessed Moore sign an affidavit providing that Lee had lived with her at the time of the burglary, Moore herself testified that Lee had broken into the apartment and did not reside with her, and explained that her mother had given her the affidavit to sign, that it was untrue, and that she had signed it because she wanted the burglary charge to "go away" so that she would not have to go through two separate trials. Moreover, Summerhill testified that he saw Lee break into the apartment and strike her. And finally, a police officer testified that on the night of the burglary, he had searched the apartment for men's clothes and shoes to determine if Lee lived there, and found no signs of a man living there.

6