[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12950
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-20393-KMM

TERRENCE LAMONT GREEN,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2011)

Before WILSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Terrence Green, a Florida prisoner serving a total life sentence after being

convicted by a jury on one count of carjacking and two counts of armed robbery, appeals pro se the district court's denial of his federal habeas corpus petition filed under 28 U.S.C. § 2254.[1] We granted a certificate of appealability ("COA") on two related issues: (1) whether the district court erred in finding that Green's trial counsel was not ineffective in failing to move for a mistrial after the prosecution revealed that it possessed records of cell phone calls that it did not disclose during discovery; and (2) whether the district court erred in finding that the prosecution had disclosed the phone records. After careful review of the record and the parties' briefs, we affirm.

Regarding the first issue, Green argues that the district court erroneously analyzed his ineffective assistance of counsel claim under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), instead of under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). He further argues that had the district court applied the Strickland test, it would have found that his counsel was ineffective.

We review de novo the district court's denial of a § 2254 petition, but give deference to the state court's decision on the merits of a claim. Davis v. Jones,

_____

[1] "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Thus, "the standards governing the sufficiency of habeas corpus petitions are less stringent when the petition is drafted pro se and without the aid of counsel." Holsomback v. White, 133 F.3d 1382, 1386 (11th Cir. 1998) (quotation marks omitted).

506 F.3d 1325, 1331 (11th Cir. 2007). Federal courts may not grant habeas relief on claims previously adjudicated on the merits in a state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Davis, 506 F.3d at 1331. Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Smith v. Sec'y, Dep't of Corrs., 572 F.3d 1327, 1333 (11th Cir. 2009). However, when it is not clear whether deference applies, we may deny a § 2254 petition by reviewing the claim de novo, as the "petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review." Berghuis v. Thompkins, --- U.S. ---, 130 S. Ct. 2250, 2265 (2010).

Here, the record of the state court proceedings does not make it entirely clear on what grounds the state court denied Green's ineffective-assistance claim. However, we need not decide whether § 2254(d) deference applies to the state court's decision because we conclude that Green's claim fails even under de novo

3

review.  See id.  Specifically, the record supports affirmance on the ground that Green failed to establish ineffective assistance of counsel under Strickland.[2]

To show a violation of the right to effective assistance of counsel, a defendant must establish two elements: "First, the defendant must show that counsel's performance was deficient."  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  The standard for measuring attorney performance is whether counsel acted reasonably "under prevailing professional norms," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688–89, 104 S. Ct. at 2065 (quotation marks omitted).  "Second, the defendant must show that the deficient performance prejudiced the defense."  Id. at 687, 104 S. Ct. at 2064.  Generally, to establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  The Supreme Court has explained that

> [i]n making this determination, a court hearing an ineffectiveness claim
> must consider the totality of the evidence before the judge or jury. . . .

---

[2] We also need not decide whether the district court applied the correct standard in analyzing Green's claim because we may affirm the district court's decision "on any ground supported by the record."  See Trotter v. Sec'y, Dep't of Corrs., 535 F.3d 1286, 1291 (11th Cir. 2008) (quotation marks omitted).

4

> Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

Id. at 695–96, 104 S. Ct. at 2069. "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corrs., 623 F.3d 1331, 1344 (11th Cir. 2010).

Green was convicted of an armed robbery and the carjacking of a white Cadillac DeVille between 11:30 p.m. and 11:40 p.m. on October 30, 2001, and of a second armed robbery shortly after midnight that same night. The state introduced evidence that police officers tracked phone calls placed from a cell phone stolen from a victim during the second robbery. Those calls led police to monitor a residence at which Green was observed driving the stolen Cadillac the following evening. Green and the other occupants of the car were in possession of items stolen during the second robbery, as well as pawn slips for other items matching those stolen during that robbery. An inventory search of the car revealed further items stolen during the second robbery. Green agreed to speak with officers following his arrest. He admitted commiting the second robbery and led the police to additional property stolen during that robbery. Later, at the police

station, Green again admitted to commiting the second robbery, and also confessed, on tape, to the carjacking. A victim of the second robbery identified Green as the robber.

At trial, Green testified that he found the white Cadillac abandoned at a dump, with the keys in the ignition, at about 2 a.m. on the night of the robberies. He stated that his confessions were coerced by force and threats of force, and that his statements to police were made while he was under the influence of cocaine and ecstacy.

While deliberating, the jury asked the following question: "Does the State have the 'times' the cell phone was used after the alleged second robbery?" The following exchange then took place between the trial court, defense counsel (Mr. Gaer), and the prosecutors (Ms. Uriarte and Ms. Mato):

> MR. GAER:      I don't know.  I'm wondering if it was testified to.
>
> MS. URIARTE:   It wasn't testified to.
>
> MR. GAER:      I don't think it was testified to.
>
> THE COURT:     I think the answer is no.
>
> MS. MATO:      Can you repeat the question?
>
> MS. URIARTE:   It's not that, it's not no.  It was not testified to.
>
> THE COURT:     That is no.

MS. MATO:      We have the times.

THE COURT:     Let me read it again.  Does the state have the, quote, times, unquote, the cell phone was used after the alleged second robbery?

               The answer plain and simple is no unless my— my recollection—

MS. MATO:      There is no testimony to the times basically.

THE COURT:     That is what I thought.  So I'm going to write no.

Green argues that the undisclosed cell phone records would have been consistent with his trial testimony that he found the vehicle at about 2 a.m. on the night of the robberies, and his counsel was deficient for failing to move for a mistrial so that the state could produce those records.  He further argues that he was prejudiced by his counsel's deficiency because the jury inquired about the phone records and was therefore at least considering whether his version of events was accurate.  Thus, Green argues, with the phone records corroborating his testimony, it is reasonable to conclude that the jury would have acquitted him.  We disagree.  Even assuming that the state had suppressed or otherwise failed to disclose the times of the phone calls, we conclude that Green cannot establish an ineffective assistance of counsel claim because he cannot satisfy Strickland's prejudice prong.

7

We recognize that Green's trial counsel, if equipped with this evidence, might have attempted to argue to the jury that it was implausible that Green would come into possession of the phone during the second robbery just after midnight, but would then wait two hours before placing any calls from that phone. But we cannot say that there is a "reasonable probability that . . . the result of the proceeding would have been different" if counsel had been able to present this argument to the jury. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. The evidence against Green was overwhelming. It included a victim's positive identification of Green as the robber, police testimony about Green being found with the stolen property, and Green's taped confessions. In light of this evidence, and given the very limited probative value, if any, of the times of the phone calls, we conclude that Green cannot satisfy Strickland's prejudice prong. See id at 695–96, 104 S. Ct. at 2069 (explaining that some errors will have only "an isolated, trivial effect," and that "a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").[3]

Our conclusion might be different if this evidence would contradict or

_____

[3] As a result, we need not address the second COA issue: whether the district court erred in finding that the prosecution had disclosed the phone records. Even assuming that the state had suppressed the phone records, we have now concluded that Green's claim fails under Strickland.

8

undermine the state's evidence.  But, here, there was no contention that Green had made the phone calls earlier, or at any particular time, and the prosecution did not attempt to suggest that the times of the phone calls contradicted Green's story. The fact that a piece of potential evidence—such as the times the phone calls were made—is not incriminating, does not necessarily mean that the evidence is exculpatory.  In this case, the supposedly suppressed evidence would have at best "an isolated, trivial effect," id. at 695–96, 104 S. Ct. at 2069, and the withholding of it would not be sufficient to undermine our confidence in the jury's verdict.  Id. at 694, 104 S. Ct. at 2068 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

For these reasons, we affirm the district court's denial of Green's § 2254 petition.

**AFFIRMED.**